1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                   **CENTRAL DISTRICT OF CALIFORNIA**

10

11

12  CALTEX PLASTICS, INC.,       )   2:13-cv-06611 RSWL (JEM)
                                 )
13                               )
             Plaintiff,          )   **ORDER re: Defendant's**
14                               )   **Motion for Summary**
      v.                         )   **Judgment** [27]
15                               )
                                 )
16  SHANNON PACKAGING CO.,       )
                                 )
17                               )
             Defendant.          )
18                               )
                                 )
19                               )
    _____  )
20

21      Currently before the Court is Defendant Shannon

22  Packaging Co.'s ("Defendant" or "Shannon") Motion for

23  Summary Judgment [27] ("Motion"), in which Defendant

24  requests summary judgment in its favor on all three

25  claims asserted against it by Plaintiff Caltex Plastics

26  Inc. ("Plaintiff" or "Caltex").  Notice of Def.'s Mot.

27  Summ. J. 1:21-2:4, ECF No. 27.

28      The Court, having reviewed all papers submitted and

                                  1

pertaining to Defendant's Motion [27], **NOW FINDS AND RULES AS FOLLOWS:** The Court **GRANTS** Defendant's Motion for Summary Judgment [27].

## I. FINDINGS OF FACT

1.  Plaintiff Caltex, a California corporation with a principal place of business in California, manufactures, markets, and distributes polyethylene bags and laminated products for military and electronics. Pl.'s Resp. to Def.'s Statement of Uncontroverted Facts ("Pl.'s Facts") ¶ 11, ECF No. 35 (undisputed).

2.  Defendant Shannon, also a California corporation with a principal place of business in California, is a leading supplier of custom pouches, tubing, and sheeting products that protect, unitize, and market products for a variety of industries. Id. ¶ 9 (undisputed).

3.  The U.S. Department of Defense ("DOD") has a Qualified Products List ("QPL"), which lists products that the DOD has approved to be used in Defense Department contracts that require a "qualified" product. Id. ¶¶ 14-15, 24 (undisputed).

4.  The QPL does not apply to non-military contractors or applications, nor does it apply to military contracts that do not call for a qualified product. Id. (undisputed).

5.  Caltex's packaging products include flexible

military packaging material that is qualified by the Department of the Navy ("DON") as meeting the DOD's MIL-PRF-81705 Type III specification for "flexible barrier materials, often supplied as bags." <u>Id.</u> ¶ 12 (undisputed).

6.   The MIL-PRF-81705 specification's requirements are used to qualify types of flexible barrier material that is either Type I (moisture barrier) or Type III (static shielding). <u>Id.</u> ¶ 16 (undisputed); Compl. ¶ 15 (undisputed).

7.   Caltex's MIL-PRF-81705 Type III products have been approved by the DON and were placed on the DOD's QPL in February 2010.  Pl.'s Facts ¶ 13 (undisputed).

8.   At present, Plaintiff is the only entity qualified by the DON to provide materials designated MIL-PRF 81705 Type III to U.S. Defense contracts that require "qualified" product for MIL-PRF 81705 Type III material.  <u>Id.</u> ¶¶ 12-14 (undisputed).

9.   The QPL can be accessed by anyone on the Internet. <u>Id.</u> ¶ 25 (undisputed).

10.  Plaintiff did not allege or produce evidence to support that Shannon ever stated that its products appear on the QPL or that Shannon's products have been qualified by the DOD.  <u>Id.</u> ¶ 4 (undisputed).

11.  Shannon's data sheets for some of Shannon's product, including Shannon's SS103 product, previously stated that the product was "[d]esigned

to meet the performance of MIL PRF 81705 T3." <u>Id.</u>
¶ 5 (undisputed); <u>see</u> Williams Decl. Supp'g Def.'s
Mot. Summ. J. ("Williams Decl.), Ex. A, ECF No. 29.

12. Shannon ceased to state that its products were
"[d]esigned to meet the performance of MIL PRF
81705 T3" prior to the commencement of this
lawsuit.  Pl.'s Facts ¶ 6 (not disputed by
admissible evidence); Walsh Decl. ¶ 8, ECF No. 30;
<u>see</u> Williams Decl., Ex. E.

13. Shannon clearly communicates to its customers and
potential customers that Shannon is not on the QPL
for MIL-PRF 81705 Type III product, that Shannon
products are not on the QPL, and that Shannon
products are not qualified by the DOD.  Pl.'s Facts
¶¶ 7, 23 (not disputed by admissible evidence);
Walsh Decl. ¶¶ 12-15, Exs. C-D; <u>see</u> Williams Decl.,
Ex. D.

14. When accepting an order from a customer for its
SS103 bags, Shannon advises the customer that the
SS103 bags are not on the QPL.  Pl.'s Facts ¶ 29
(not disputed by admissible evidence); Walsh Decl.
¶ 15.

15. Shannon's representation that its bags were
"[d]esigned to meet the performance of MIL PRF
81705 T3" was based upon the results of testing
Shannon conducted of its material, or which a third
party conducted on behalf of Shannon of its
material.  Pl.'s Facts ¶ 8 (not disputed by

admissible evidence); Walsh Decl. ¶ 11.

16. The bags Shannon described as being "[d]esigned to meet the performance of MIL PRF 81705 T3" have not been tested by Caltex, or by any third party on behalf of Caltex, to determine whether the material meets the performance requirements of MIL-PRF-81705 for Type III material.  Pl.'s Facts ¶ 19 (undisputed).

17. Caltex tested the bags of some of its competitors, other than Shannon, to determine if those bags met the requirements of MIL-PRF-81705 Type III.  <u>Id.</u> ¶ 20 (undisputed).

18. Shannon's data sheets for some of Shannon's product represent that the product has a physical property of "EMI Shielding" that is tested by the "MIL B 81705 C" "Test Method."  Williams Decl., Ex. E.

19. No evidence of actual confusion has been offered by Caltex.  Pl.'s Facts ¶¶ 21-22 (undisputed).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 states that a "court shall grant summary judgment" when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Under Rule 56, the party moving for summary judgment has the initial burden to show "no genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a); <u>see</u> <u>Nissan Fire & Marine Ins. Co. v. Fritz Cos.</u>, 210 F.3d 1099, 1102-03

(9th Cir. 2000).   The burden then shifts to the non-
moving party to produce admissible evidence showing a
triable issue of fact.   <u>Nissan Fire & Marine Ins.</u>, 210
F.3d at 1102-03; <u>see</u> Fed. R. Civ. P. 56(a).   When a
defendant moves for summary judgment, summary judgment
"is appropriate when the plaintiff fails to make a
showing sufficient to establish the existence of an
element essential to [her] case, and on which [she]
will bear the burden of proof at trial."   <u>Cleveland v.
Policy Mgmt. Sys. Corp.</u>, 526 U.S. 795, 805-06 (1999);
<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

## III. DISCUSSION

**A.   Evidentiary Objections**

Both parties make evidentiary objections, asserting
that portions of witness declarations are inadmissible
evidence.   Pl.'s Objections to Walsh Decl., ECF No. 36;
Def.'s Objections to Stein Decl., ECF No. 41; Def.'s
Objections to Higgs Decl., ECF No. 42.

When determining a motion for summary judgment, the
court may only consider evidence admissible at trial,
though the form may be different at the summary
judgment stage.   Fed. R. Civ. P. 56(c)(2)-(4); <u>Colony
Holdings, Inc. v. Texaco Refining & Mktg., Inc.</u>, No.
SACV00217DOC(MLGX), 2001 WL 1398403, at *5 (C.D. Cal.
Oct. 29, 2001) (citing <u>Curnow v. Ridgecrest Police</u>, 952
F.2d 321, 324 (9th Cir. 1991)).

1.   <u>Plaintiff's Evidentiary Objections</u>

Plaintiff makes objections [36] to portions of the

6

Walsh Declaration in support of Plaintiff's Motion for Summary Judgment.   Plaintiff objects [36] on grounds of lack of foundation and relevance, among other arguments.   "To the extent that the Court relied on objected-to evidence, [the Court] relied only on admissible evidence" and, therefore, **OVERRULES** Plaintiff's objections to the Walsh Declaration. Caldwell, 2015 WL 1897806, at *2 n.2; see also Capital Records, LLC v. BlueBeat, Inc., 765 F. Supp. 2d 1198, 1200 n.1 (C.D. Cal. 2010).

　　　2.   Defendant's Evidentiary Objections

　　Defendant objects to the Higgs Declaration and portions of the Stein Declaration.

　　　　a.   *Objections to Stein Declaration*

　　Defendant objects to the Declaration of Steven A. Stein because the Declaration "is misleading as to what occurred during and after the close of discovery in this matter" and raises irrelevant points.   Def.'s Objections to Stein Decl. 1:23-2:12.   Because the Court need not rely on the Stein Declaration to determine the present matter, Defendant's objections to the Stein Declaration are **OVERRULED** as moot.   See Henson Beverage Co. v. Vital Pharm., Inc., No. 08-CV-1545-IEG (POR), 2010 WL 1734960, at *3 (S.D. Cal. Apr. 27, 2010).

　　　　b.   *Objections to Higgs Declaration*

　　Defendant objects to the Higgs Declaration on the grounds that "(1) it demonstrates Caltex's violation of the Stipulated Protective Order [ECF 24] in this

matter; (2) the declarant appears to attempt to offer
expert testimony without having been disclosed as an
expert witness; and (3) the declarant's testimony is
irrelevant."   Def.'s Objections to Higgs Decl. 1:23-28.
Defendant requests that the Court strike the entirety
of the Higgs Declaration as being in violation of the
parties' Stipulated Protective Order and the Federal
Rules of Civil Procedure governing the disclosure of
expert witnesses.  Id. at 2:1-7.

> i. *Violation of Fed. R. Civ. P. 26*

Defendant argues that the testimony in the Higgs
Declaration goes beyond the scope of a lay witness and
that Higgs was never disclosed as an expert witness, in
violation of Rule 26(a) of the Federal Rules of Civil
Procedure, which, under Rule 37(c)(1), should result in
the exclusion of the Higgs Declaration.  Id. at 4:5-14,
7:26-8:7.

To determine whether the Higgs Declaration should
be excluded under Rule 37(c)(1), the Court must
determine three things: (1) whether Higgs's testimony
goes beyond the scope of lay witness opinion testimony,
and is therefore expert testimony, under Rules 701 and
702 of the Federal Rules of Evidence; (2) whether
Plaintiff failed to disclose Higgs as an expert
witness, as required by Rule 26 of the Federal Rules of
Civil Procedure; and (3) whether Plaintiff's failure to
disclose was "substantially justified or harmless."
Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d

1  1101, 1106 (9th Cir. 2001); see Fed. R. Civ. P.

2  37(c)(1).

3        Beyond Scope of Lay Witness Opinion Testimony

4        The Court must first determine whether Higgs's

5  testimony goes beyond the scope of permissible lay

6  witness testimony.  Rule 701 of the Federal Rules of

7  Evidence states that "[i]f a witness is not testifying

8  as an expert, testimony in the form of an opinion is

9  limited to one that is . . . (c) not based on

10  scientific, technical, or other specialized knowledge

11  within the scope of Rule 702."[1]  Fed. R. Evid. 701.

12       While a lay witness may testify based on their own

13  experience, lay witness observations and opinions must

14  be "common," i.e., based on common observations or

15  experience, and must not require expertise.  Humboldt

16  Baykeeper v. Union Pacific R.R. Co., No. C 06-02560

17  JSW, 2010 WL 2179900, at *1 (N.D. Cal. May 27, 2010);

18  see Fed. R. Evid. 701; United States v. Figueroa-Lopez,

19  125 F.3d 1241, 1246 (9th Cir. 1997) (holding that

20  opinion by lay witness on observations that were not

21  "common," but required demonstrable expertise, was

22  

23       [1] Rule 702 of the Federal Rules of Evidence states that "[a]

24  witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

25  (a) the expert's scientific, technical, or other specialized

26  knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on

27  sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably

28  applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

improper lay witness testimony).  "The mere percipience of a witness to the facts on which he wishes to tender an opinion does not trump Rule 702." <u>Humboldt Baykeeper</u>, 2010 WL 2179900, at *1 (citing <u>Figueroa-Lopez</u>, 125 F.3d at 1246) (internal quotation marks and alterations omitted)).

Upon review of the Higgs Declaration, the Court finds that substantial portions of the Higgs Declaration go beyond the scope of permissible lay witness opinion testimony, as Higgs testifies to matters of expertise beyond "common" observations or experience.  <u>See</u> <u>id.</u> at *1; Higgs Decl. ¶¶ 11-20.

Higgs testifies regarding MIL-PRF-81705 qualification specifications promulgated by the Department of the Navy, which include "designations as to the particular materials that must be used, the qualifications they must meet, their applications, and related specifications."  Higgs Decl. ¶ 3.  Higgs testifies about MIL-PRF-81705 "Performance Requirements," which, according to Higgs, include, among other requirements, "Seam fabrication," "Blocking resistance," "Contact corrosivity," "Static decay," "Surface resistivity," and "Electromagnetic interference (EMI) attenuation."  <u>Id.</u> ¶ 13.  Higgs also testifies about "ASTM INTERNATIONAL standards that can be utilized to test MIL-PRF-81705 Type III products."  <u>Id.</u> ¶ 14.  Higgs states that, in connection with this litigation, he reviewed the advertising and other

documents produced by Shannon that relate to Shannon's static shielding bags. Id. ¶ 12. Upon review of Shannon's "Static Control Film Data Sheet" for Shannon's SS103 product, Higgs asserts the opinion and conclusion that Shannon's SS103 product "is not 'designed to meet the performance' of MIL-PRF-81705 Type III as claimed because there is no showing that the product in question has the mandatory characteristics required by the Performance Requirements." Id. ¶ 13.

Such an opinion unquestionably requires a high level of expertise and "scientific, technical, or other specialized knowledge." Fed. R. Evid. 701. Higgs's opinions and conclusions are not based on common observations or experience but, instead, require "demonstrable expertise." Figueroa-Lopez, 125 F.3d at 1246.[2] It is not "common" experience to know the meaning of the term, "Electromagnetic interference

---

[2] See also United States v. Skeet, 665 F.2d 983, 985 (9th Cir. 1982)(explaining that lay witnesses opinion testimony is sometimes permitted "[b]ecause it is sometimes difficult to describe the mental or physical condition of a person, his character or reputation, the emotions manifest by his acts; speed of a moving object or other things that arise in a day to day observation of lay witnesses; things that are of common occurrence and observation, such as size, heights, odors, flavors, color, heat, and so on"); Fed. R. Civ. P. 701, 2000 Amend. Advisory Committee Notes (stating that Rule 701 makes the following kind of distinction between lay and expert opinion testimony: "lay testimony 'results from a process of reasoning familiar in everyday life,' while expert testimony 'results from a process of reasoning which can be mastered only by specialists in the field'").

(EMI) attenuation," or to know whether certain product testing is "comparable" to "the ASTM INTERNATIONAL standards."  See Higgs Decl. ¶¶ 13-14.

As such, the Court finds that portions of Higgs's testimony go beyond the scope of lay witness opinion testimony under Federal Rules of Evidence 701 and 702 and thus constitute expert witness testimony.[3]  See Figueroa-Lopez, 125 F.3d at 1246.

### Failure to Disclose Under Fed. R. Civ. P. 26

Second, the Court must determine whether Plaintiff complied with the disclosure requirements of Fed. R. Civ. P. 26(a)(2).

Rule 26 of the Federal Rules of Civil Procedure requires that parties make mandatory initial disclosures, including "the identify of any witness [the party] may use at trial to present evidence under Federal Rule of Evidence 702."  Fed. R. Civ. P. 26(a)(2)(A).  Rule 26 requires parties to not only disclose the identify of an expert witness, but to supply the opposing party with either a written report for "retained or specially employed" experts, or a statement of "the subject matter on which the witness is expected to present [Rule 702] evidence" and "a

---

[3] Even if Higgs is "extremely familiar with the tests that are performed and the requirements that must be met to obtain MIL SPEC approval from the DON" due to his years of experience with such matters, this does not change the fact that Higgs's testimony is undoubtedly beyond the scope of lay witness opinion testimony. See Humboldt Baykeeper, 2010 WL 2179900, at *1.

summary of the facts and opinions to which the witness
is expected to testify" for all other experts.  Fed. R.
Civ. P. 26(a)(2)(C).  Rule 26 states that such initial
disclosures related to expert witnesses must be made
"at least 90 days before the date set for trial" unless
another date is stipulated to or ordered by the court.
Fed. R. Civ. P. 26(a)(2)(D).  Rule 26 requires the
parties to "supplement these disclosures when required
under Rule 26(e)."  Fed. R. Civ. P. 26(a)(2)(E).

    Here, it is clear that Plaintiff failed to disclose
Higgs as an expert witness, as required by Rule
26(a)(2).  Not only did Plaintiff fail to disclose
Higgs as an expert, Plaintiff did not even disclose
Higgs as a lay witness.[4]  See Fed. R. Civ. P.
26(a)(1)(A)(i).

    Because Plaintiff did not properly disclose Higgs
as a witness, much less as an expert witness, and
because the expert cut-off date in this Action has
passed, see Dckt. # 18, Plaintiff clearly failed to
comply with Fed. R. Civ. P. 26(a)(2).  See Seifert v.
United States, No. CIV-S-04-0553DFLGGH, 2005 WL
3439010, at *1 (E.D. Cal. Dec. 14, 2005)(granting a
party's motion to exclude expert testimony when the
proponent of the expert testimony violated Rule

---

[4] Plaintiff's Initial Disclosure, filed February 14, 2015,
which has not been amended or supplemented, discloses only two
lay witnesses: Jim Walsh and Eugene Bowan, and no expert
witnesses are identified.  Pl.'s Initial Disclosure, ECF No. 20.

13

26(a)(2) and the expert cut-off date had passed).

## Substantially Justified or Harmless

"Rule 37(c)(1) gives teeth to [Rule 26(a)(2)'s] requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." Yeti by Molly, 259 F.3d at 1106. Rule 37(c)(1) of the Federal Rules of Civil Procedure states plainly that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The Advisory Committee Notes describe Rule 37(c)(1) as a "'self-executing,' 'automatic' sanction to 'provide[] a strong inducement for disclosure of material.'" Yeti by Molly, 259 F.3d at 1106. The burden is on the party facing the sanction to demonstrate that its failure to comply with Rule 26(a) is "substantially justified or harmless." Torres v. City of L.A., 548 F.3d 1197, 1213 (9th Cir. 2008).

The Ninth Circuit has provided factors that may be used to "guide a district court in determining whether a violation of a discovery deadline is justified or harmless": "(1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or

willfulness involved in not timely disclosing the
evidence." Lanard Toys Ltd. v. Novelty, Inc., 375 F.
App'x 705, 713 (9th Cir. 2010).

Here, nothing supports a finding that Plaintiff's
failure to disclose was "substantially justified."  As
in Yeti by Molly, Plaintiff could have supplemented its
initial disclosure or "could have asked for an
extension of the discovery [or expert] deadline[s],"
but did not.  Yeti by Molly, 259 F.3d at 1106.  Under
the four factors, Plaintiff's failure to disclose was
not substantially justified or harmless.

Regarding prejudice or surprise, it is clear that
the Higgs Declaration was a surprise to Defendant, as
Defendant's Motion for Summary Judgment does not
anticipate the material in the Higgs Declaration.
Defendant even argues in its Reply that Plaintiff is
trying to "amend its Complaint" by asserting completely
new facts and legal theories not asserted in
Plaintiff's Complaint.  Reply 2:26-3:1, 6:15-7:9.  It
is also clear that the Higgs Declaration is highly
prejudicial to Defendant, as Defendant had no
opportunity to conduct discovery related to the content
of the Higgs Declaration, no opportunity to depose
Higgs about his technical testimony, and no reasonable
opportunity to retain an expert who could testify on
Defendant's behalf in response to the Higgs
Declaration.  At this late stage of the Action, within
a few weeks of the trial date, Plaintiff does not have

the practical "ability to cure the prejudice," and the delays caused by the new expert testimony would likely result in a "disruption of the trial." <u>Lanard Toys</u>, 375 F. App'x at 713; <u>See</u> <u>Seifert</u>, 2005 WL 3439010, at *1 ("The failure to turn over expert reports cannot be described as harmless, particularly when the time for discovery has elapsed.").

Because Plaintiff's failure to disclose Higgs as a witness, as required by Rule 26, was not "substantially justified or harmless," the Court, pursuant to Rule 37(c)(1), **SUSTAINS** Defendant's objections to the Higgs Declaration and **HEREBY EXCLUDES** the Higgs Declaration in its entirety, including the attached exhibits.  Fed. R. Civ. P. 37(c)(1).[5]

ii. <i>Violation of Protective Order</i>

Regarding the Protective Order, Defendant states that the material in Exhibits 6 and 7 is designated "ATTORNEY'S EYES ONLY," which, under the Protective

---

[5] <u>See</u> <u>Yeti by Molly</u>, 259 F.3d at 1006 ("[E]xclusion is an appropriate remedy for failing to fulfill the required disclosure requirements of Rule 26(a)."); <u>Carson Harbor Village, Ltd. v. Unocal Corp.</u>, No. CV 96-3281 MMM (RCX), 2003 WL 22038700, at *2 (C.D. Cal. 2003) ("Excluding expert evidence as a sanction for failure to disclose expert witnesses in a timely fashion is automatic and mandatory unless the party can show the violation is either justified or harmless." (internal quotation marks omitted)); <u>Colony Holdings, Inc. v. Texaco Refining & Mktg., Inc.</u>, No. SACV00217DOC(MLGX), 2001 WL 1398403, at *6 (C.D. Cal. Oct. 29, 2001) (in the context of summary judgment, excluding a witness's declaration asserting technical opinions and conclusions because it was beyond the scope of lay witness opinion testimony and the witness had not been disclosed as an expert witness, as required by Fed. R. Civ. P. 26(a)(2)).

16

Order in this Action, cannot be disclosed to the
receiving party due to the competitive harm that could
result from such disclosure.  Def.'s Objections to
Higgs Decl. 2:17-3:19.  Defendant states that Caltex's
counsel allowed Caltex's Vice President, James Higgs,
to review documents, including Exhibits 6 and 7, that
were designated by Shannon as ATTORNEY'S EYES ONLY,
even though Higgs did not fall within the category of
persons allowed to review such material, as Higgs's
company is Shannon's competitor.  Id.  Defendant also
notes that, even if Caltex could have shown the
ATTORNEY'S EYES ONLY material to Higgs, Caltex was
required to first have Higgs sign Exhibit A of the
Protective Order, agreeing to be bound by its terms,
which Caltex did not do.  Id. (citing Protective Order
¶ 8).  Defendant requests that the Court sanction
Plaintiff for its violation of the Protective Order by
excluding the entire Higgs Declaration or, in the
alternative, the portions of the Higgs Declaration
related to Exhibits 6 and 7.  Id. at 5:4-6:1.
Defendant argues that "Caltex should not be allowed to
derive benefit" from its violation of the Protective
Order.  Id. at 3:1-3.

      The Court finds that Plaintiff violated the
Protective Order [24] in this Action by disclosing
Exhibits 6 and 7, properly marked "ATTORNEY'S EYES

17

ONLY,"[6] to Mr. Higgs, who is Vice President of Plaintiff Caltex, a competitor of Defendant Shannon. <u>See</u> Protective Order ¶¶ 4, 7, 12.  Rule 37(b) authorizes the Court to sanction Plaintiff for its violation of a Court order.[7]  The Court finds that Defendant's requested sanction, to exclude the Higgs Declaration in its entirety, is an appropriate sanction for Plaintiff's violation of the Protective Order.

**B.  False Advertising Claims**

   1.   <u>False Advertising under 15 U.S.C. § 1125(a)</u>

   To prove a prima facie case for false advertising in violation of 15 U.S.C. § 1125(a), a plaintiff must show, among other elements, that "the defendant made a false statement either about the plaintiff's or its own product." <u>Jarrow Formulas, Inc. v. Nutrition Now, Inc.</u>, 304 F.3d 829, 835 n.4 (9th Cir. 2002) (citing <u>Southland Sod Farms v. Stover Seed Co.</u>, 108 F.3d 1134, 1139 (9th Cir. 1997)).  "Falsity" can be proved by showing that the advertisement is "literally false, either on its face or by necessary implication"; or, if not literally false, that the representation is "likely to mislead or confuse consumers," which requires proof

---

   [6] <u>See</u> Pl.'s Renewed Appl. to File Under Seal Exs. 6 & 7, ECF No. 46 (stating that Exhibits 6 and 7 consist of information that "constitute[s] trade secrets").

   [7] Fed. R. Civ. P. 37(b); <u>see</u> <u>See</u> <u>Ajaxo, Inc. v. Bank of Am. Tech. & Operations, Inc.</u>, No. 2:07-cv-00945-GEB-GGH, 2008 WL 4933652, at *1 (E.D. Cal. Nov. 18, 2008); <u>United States v. Nat'l Med. Enters., Inc.</u>, 792 F.2d 906, 910-11 (9th Cir. 1986).

1   "by extrinsic evidence" that the advertisements "tend
2   to mislead or confuse consumers." <u>Southland Sod Farms</u>,
3   108 F.3d at 1139; <u>In re Century 21-RE/MAX Real Estate</u>
4   <u>Adver. Claims Litig.</u>, 882 F. Supp. 915, 922-23 (C.D.
5   Cal. 1994).

6            a.   <u>Literal Falsity</u>
7        Plaintiff alleges in its Complaint that "Shannon
8   has misrepresented the nature, characteristics,
9   qualities, and other material aspects of certain of its
10  products" by representing in a film data sheet that
11  Shannon's product is "[d]esigned to meet the
12  performance of MIL PRF 81705 Type III."  Compl. ¶¶ 18-
13  19; <u>see</u> Williams Decl., Ex. B.  Though not alleged in
14  the Complaint, Plaintiff's Opposition adds that Shannon
15  also falsely represented in data sheets that Shannon's
16  product was subjected to the MIL B 81705 C Test Method.
17  Opp'n 1:14-16; <u>see</u> Williams Decl., Exs. B, E.

18       To prove that Shannon's representations are
19  literally false, Plaintiff bears the burden of proving
20  by affirmative evidence[8] that Shannon's SS103 bags are

21  _____

22       [8] <u>See</u> <u>Hansen Beverage Co. v. Vital Pharm., Inc.</u>, No. 08-cv-
    1545-IEG, 2010 WL 1734960, at *4-*5 (S.D. Cal. Apr. 27, 2010)
23  (stating that "[b]ecause [the defendant] does not expressly
    represent" that its advertising claim "is based on product
24  testing, or implicitly make that claim through visual
    representations, [the plaintiff] must affirmatively prove that
25  the claim is false").  In this case, Elkay did not "expressly
    represent" that it tested its Elkay bags or implicitly make a
26  claim of testing based on graphs or any sort of visual
    representation; thus, Elkay's advertisement is less like an
27  "establishment claim" and more like a statement that "lacks
28

1  not "[d]esigned to meet the performance of MIL PRF
2  81705 Type III" or that Shannon did not subject to the
3  MIL B 81705 C test method the products for which
4  Shannon made that representation.   Though Plaintiff
5  asserts that Shannon's representations are "literally
6  false," Opp'n 10:21-23, Plaintiff does not provide any
7  admissible evidence showing literal falsity.

8      Plaintiff offers the following allegations to
9  support its claim of "literal falsity":
10 1) Shannon's products "have not been tested by the DON
11 nor have they successfully passed the DOD qualifying
12 activity," Compl. ¶ 20;
13 2) Shannon's products are not listed on the Qualified
14 Products List under the Defense Standardization
15 Program," id.;
16 3) Shannon's products "are not military grade
17 products," id.;
18 4) Shannon's representations are "without the
19 substantiation required under applicable laws," id. ¶
20 27; and
21 5) Shannon's discovery material does not establish that
22 Shannon's products were subjected to the MIL B 81705 C
23 
24 substantiation."  See Fraker v. Bayer Corp., No. 08-1564, 2009 WL
   5865687, at *7-*9 (E.D. Cal. Oct. 6, 2009) (noting that in a case
25 for false advertising under the Lanham Act, the burden of proof
   does not shift to the defendant to prove substantiation of
26 advertising claims because otherwise, a plaintiff could use a
   false advertising claims to "shoehorn an allegation of violation
27 of the Federal Trade Commission Act," which does not allow
   private causes of action).
28

test method or to the performance requirements of MIL-PRF-81705 Type III, Opp'n 1:14-2:6.

### i. *Qualification Argument*

Plaintiff's factual allegations related to the testing or qualification of Shannon's products by the Department of Defense ("DOD") or the Department of the Navy ("DON"), even if true, do not establish literal falsity.

As discussed in <u>Caltex Plastics, Inc. v. Elkay Plastics Co., Inc.</u>, Case No. 2:12-cv-10033 RSWL (JEMx) (C.D. Cal. Feb. 4, 2015), ECF No. 62, the facts that Shannon's products "have not been tested by the DON nor have they successfully passed the DOD qualifying activity" and "are not listed on the Qualified Products List under the Defense Standardization Program" do not establish the falsity of Shannon's representations that its product is "[d]esigned to meet the performance of MIL PRF81705 T3" or was subjected to the MIL B 81705 C test method. <u>See</u> Ruling & Order re: Bench Trial, <u>Caltex Plastics</u>, Case No. 2:12-cv-10033 RSWL, ECF No. 62, at 10:10-12:18. Shannon has not represented that its products are qualified or on the QPL. Pl.'s Resp. to Def.'s Statement of Uncontroverted Facts ¶ 4 (undisputed fact). Plaintiff has not proved its allegation that "[a] manufacturer may only reference [a mil spec] number in its product advertisements if the product has been tested and qualified by the DON."

Compl. ¶ 16; see Ruling & Order re: Bench Trial, Caltex
Plastics, Case No. 2:12-cv-10033 RSWL, ECF No. 62, at
10:10-12:18.  Defendant asserts that regardless of the
DOD's or DON's involvement, a product can be subjected
to MIL B 81705 C test method and can meet the
performance requirements of MIL PRF 81705 Type III.
Def.'s Mot. 8:10-10:6.  Plaintiff has not proved
otherwise, and it is Plaintiff's burden to prove.[9]

Plaintiff's argument that Shannon's representations
are literally false because Shannon's products "are not
military grade products" also fails, if not for the
above reasons, then for lack of proof.  Plaintiff does
not define the term, "military grade products," but if
the term includes non-qualified products, then

---

[9] Plaintiff argues, via the Stein Declaration, that it was
unable to obtain the evidence required to support the falsity
element of its false advertising claims because Defendant did not
supply Plaintiff with samples of the SS103 material.  Stein Decl.
¶¶ 3-5.  This argument is meritless because Plaintiff did not
request samples of Shannon's product until after the discovery
cut-off date.  See id.; Dckt. ## 18, 26.  Plaintiff cannot blame
Defendant for not responding to discovery requests made after the
discovery cut-off date when Plaintiff had ample time to make
discovery requests and did not file any motions to compel or
motions to further extend the discovery cut-off date.
Plaintiff's late-filed Stipulation for a Protective Order, giving
Defendant only two months to provide the requested discovery
material, also counsels against sympathy for Plaintiff.  See
Stein Decl., Exs. A-C.
    Furthermore, Plaintiff requested samples of product that
Shannon sold as "'meets the electrostatic requirements' of MIL-B-
81705 Type III," but there is no evidence that Shannon ever sold
any products under that representation.  As such, Shannon's
failure to respond to that late discovery request is justified
even if the request was not late.  Stein Decl., Ex. C, at 3, ¶ 8.

1   Plaintiff has failed to provide any admissible evidence
2   showing that Shannon's products fail to meet military
3   specification requirements.  <u>See</u> <u>Fraker v. Bayer Corp.</u>,
4   No. 08-1564, 2009 WL 5865687, at *7-*9 (E.D. Cal. Oct.
5   6, 2009) (noting that, in a case for false advertising
6   under the Lanham Act, the burden of proof does not
7   shift to the defendant to prove substantiation of
8   advertising claims; otherwise, a plaintiff could use a
9   false advertising claim to "shoehorn an allegation of
10  violation of the Federal Trade Commission Act," which
11  does not allow private causes of action).

12              ii. *Lack of Substantiation*

13       Plaintiff's Complaint asserts that Shannon's
14  representations are literally false because they are
15  "without the substantiation required under applicable
16  laws."  Compl. ¶ 20.  Plaintiff fails to identify any
17  of the "applicable laws" to which Plaintiff refers and
18  fails to provide any "applicable laws" that require
19  Defendant to substantiate its advertising claims.

20       Plaintiff's allegation also misstates the law: in
21  an action for false advertising, the burden of proof
22  does not shift to the defendant to prove substantiation
23  of advertising claims.[10]

24

25       [10] <u>Fraker</u>, 2009 WL 5865687, at *7-*9; <u>see also</u> <u>In re Clorox</u>
     <u>Consumer Litig.</u>, 894 F. Supp. 2d 1224, 1232 (N.D. Cal. Aug. 24,
26   2012) (stating that "[c]ourts have been careful to distinguish
     between allegations that a defendant's advertising claims are
27   actually false and allegations that such claims lack
     substantiaion" and that "[c]onsumer claims for a lack of
28

1

### iii. *Establishment Claim Theory*

2      Though not mentioned in the Complaint,[11] Plaintiff

3 bases nearly all of its Opposition on the argument that

4 Shannon's representations are literally false because

5 Shannon's representations are "establishment claims"

6

7      substantiation are not cognizable under California law"); <u>Chavez

8 <u>v. Nestle USA, Inc.</u>, No. CV 09-9192-GW(CWx), 2011 WL 2150128, at
*5 (C.D. Cal. May 19, 2011) (stating that "lack of

9 substantiation" "is not a cognizable theory under the UCL or
FAL"), <u>rev'd in part on other grounds</u>, 511 F. App'x 606 (9th Cir.

10 2013).

11     [11] Because Plaintiff's Complaint does not even hint at an
establishment claim theory of false advertising, it is arguable,

12 and Defendant does argue, that Plaintiff is attempting to
improperly amend its Complaint through its Opposition to

13 Defendant's Motion for Summary Judgment. Reply 6:15-7:9. New
facts or legal theories to support claims asserted in the

14 complaint are not necessarily improper, but they must comply with
the pleading standards in Fed. R. Civ. P. 8. <u>See</u> <u>Pickern v. Pier

15 1 Imps. (U.S.), Inc.</u>, 457 F.3d 963, 968-69 (9th Cir. 2006). Rule
8(a)(2) "requires that the allegations in the complaint 'give the

16 defendant fair notice of what the plaintiff's claim is and the
grounds upon which it rests.'" <u>Id.</u> at 968.

17     Plaintiff asserts that the following vague allegation in its
Complaint enables Plaintiff to fairly assert new facts under a

18 new establishment claim theory of liability: "Defendants made
express and implied claims about the Shannon products without the

19 substantiation required under applicable laws." Pl.'s Resp. to
Def.'s Statement Uncontroverted Facts ¶ 3 (quoting Compl. ¶ 27).

20 Such an allegation does not put Defendant on "fair notice" of an
establishment claim theory of liability, and no other allegations

21 in the Complaint do so, either. As in <u>Pickern</u>, Plaintiff's vague
allegation lacking any factual "grounds" "is not a substitute for

22 investigating and alleging the grounds for a claim," and, as
such, the Court finds that Plaintiff's "complaint gave

23 [Defendant] no notice of the specific factual allegations [or
legal theory] presented for the first time in [Plaintiff's]

24 opposition to summary judgment." <u>Pickern</u>, 457 F.3d at 969.
    But, as discussed herein, even if Plaintiff's allegations in

25 the Complaint could encompass the new facts and legal theory
asserted in Plaintiff's Opposition, Plaintiff's claims still fail

26 for lack of evidence.

27

28

that have been shown unreliable and not probative by
the Higgs Declaration.  Opp'n 1:14-2:6, 11:7-19:2.
Plaintiff's last attempt to establish literal falsity
fails for lack of evidence.

An "establishment claim" theory of literal falsity
is a "subspecies of the false by necessary implication
doctrine"[12] and requires that the defendant's
advertising claim be "based on product testing." <u>FLIR</u>
<u>Sys., Inc. v. Sierra Media, Inc.</u>, 903 F. Supp. 2d 1120,
1129 (D. Or. 2012); <u>see</u> <u>Southland Sod Farms v. Stover</u>
<u>Seed Co.</u>, 108 F.3d 1134, 1139 (9th Cir. 1997).

Here, Plaintiff asserts for the first time in its
Opposition to summary judgment that Defendant's
representations that its product is "[d]esigned to meet
the performance of MIL PRF 81705 T3" and was subjected
to the MIL B 81705 C test method are advertisements
"based on product testing."  Opp'n 10:21-19:2.

Even if Shannon's representations qualify as
establishment claims, Plaintiff still has the burden of
producing evidence that "either attack[s] the validity
of the defendant's tests directly or . . . show[s] that
the defendant's tests are contradicted or unsupported
by other scientific tests."  <u>Southland Sod Farms</u>, 108

---

[12] "A false message is conveyed by necessary implication
when, 'considering the advertisement in its entirety, the
audience would recognize the claim as readily as if it had been
explicitly stated.'"  <u>Hansen Beverage Co. v. Vital Pharm., Inc.</u>,
No. 08-CV-1545-IEG (POR), 2010 WL 1734960, at *3 (S.D. Cal. Apr.
27, 2010).

F.3d at 1139.[13]   In other words, an establishment claim theory of literal falsity does not shift the burden of proof to the defendant.  See <u>Fraker</u>, 2009 WL 5865687, at *7-*9 (stating that a private plaintiff asserting a false advertising claim cannot "shoehorn an allegation of violation of the Federal Trade Commission Act . . . into a private cause of action" by shifting the burden of proof to the defendant).  A plaintiff is not relieved of its burden of proof merely because the defendant made a product testing claim.  See <u>id.</u>; <u>Southland Sod Farms</u>, 108 F.3d at 1139.

Without the Higgs Declaration, which has been excluded, Plaintiff fails to provide sufficient evidence showing that Shannon's product testing claims are "not sufficiently reliable to permit one to conclude with reasonable certainty that they established the claim made."  <u>Southland Sod Farms</u>, 108 F.3d at 1139.

---

[13] The Ninth Circuit explained the standard for proving an establishment claim theory of false advertising:
    To prove that an advertisement claim based on product testing is literally false, "a plaintiff must do *more than show* that the tests supporting the challenged claim are unpersuasive." "Rather, the plaintiff *must demonstrate* that such tests 'are not sufficiently reliable to permit one to conclude with reasonable certainty that they established' the claim made." A plaintiff may meet this burden either by *attacking* the validity of the defendant's tests directly or by *showing* that the defendant's tests are contradicted or unsupported by other scientific tests.
<u>Southland Sod Farms</u>, 108 F.3d at 1139 (emphasis added).

1    The Court finds that Plaintiff fails to show

2  "literal falsity" by sufficient admissible evidence.

3         b.   Not Literally False, but Misleading

4    "[I]f a plaintiff cannot show literal falsity . .

5  ., the plaintiff must prove, by extrinsic evidence,

6  [that] the challenged advertisements tend to mislead or

7  confuse consumers." In re Century 21-RE/MAX, 882 F.

8  Supp. at 922-23 (internal quotation marks and

9  alterations omitted).  Plaintiff does not offer any

10 "extrinsic evidence" that Shannon's representations

11 "tend to mislead or confuse consumers," and Plaintiff

12 admits as such, stating that "Caltex does not need to

13 show actual confusion because its primary claim is for

14 literal falsity."  Pl.'s Facts ¶¶ 21-22.

15    In conclusion, Plaintiff fails to meet its burden

16 of proof as to the "falsity" element of Plaintiff's

17 state[14] and federal false advertising claims.  As such,

18 the Court **GRANTS** Defendant's Motion for Summary

19

20    [14] To allege a claim for false advertising under California
21 law, a plaintiff must allege that the defendant "publicly
   disseminated advertising that [was] false or misleading, and
22 which the defendant knew or reasonably should have known was
   untrue or misleading." New Show Studios LLC v. Needle, at *17
23 (C.D. Cal. June 30, 2014) (citing Cal. Bus. & Prof. Code §
   17500).  Here, Plaintiff's California false advertising claim
24 fails for the same reason that its Lanham Act claim fails:
   Plaintiff fails to meet its burden of proof as to the "false or
25 misleading" requirement of both claims.  See, e.g., Appliance
   Recycling Ctrs. of Am., Inc. v. JACO Envtl., Inc., 378 F. App'x
26 652, 656 (9th Cir. 2010) (agreeing that a California claim for
   false advertising is "'substantially congruent'" to a false
27 advertising claim under the Lanham Act).

28

1  Judgment as to Plaintiff's claims for federal and state
2  false advertising.
3  **C.  California Unfair Competition Claim**
4      "California's Unfair Competition Law ("UCL")
5  prohibits any 'unlawful, unfair or fraudulent business
6  act or practice.'" <u>Williams v. Gerber Prods. Co.</u>, 552
7  F.3d 934, 938 (9th Cir. 2008); Cal. Bus. & Prof. Code §
8  17200.
9      1.  <u>Unlawful</u>
10     To claim a UCL violation under the "unlawful"
11  prong, a plaintiff must prove the defendant engaged in
12  a business act or practice "'forbidden by law.'" <u>VP</u>
13  <u>Racing Fuels, Inc. v. Gen. Petroleum Corp.</u>, 673 F.
14  Supp. 2d 1073, 1086 (E.D. Cal. 2009).  Because
15  Plaintiff's federal and state false advertising claims
16  fail, as discussed above, and because Plaintiff proves
17  no other legal violation to support its UCL claim,
18  Plaintiff cannot prevail under the "unlawful" prong of
19  the UCL.
20     2.  <u>Fraudulent</u>
21     A "fraudulent act" under the UCL "may include a
22  false statement, or one which, though strictly
23  accurate, nonetheless has the likely effect of
24  misleading or deceiving the public." <u>Zeltiq</u>
25  <u>Aesthetics, Inc. v. BTL Indus., Inc.</u>, No. 13-cv-05473-
26  JCS, 2014 WL 1245222, at *9 (N.D. Cal. Mar. 25, 2014)
27  (citing <u>Garcia v. Sony Computer Entm't Am., LLC</u>, 859 F.
28

Supp. 2d 1056, 1062 (N.D. Cal. 2012)).  Because

Plaintiff has not offered evidence showing that Shannon

made a false statement or that Shannon's

representations were likely to mislead or deceive,

Plaintiff cannot assert a claim under the fraudulent

prong of the UCL.

    3.  <u>Unfair</u>

    There is at least a three-way split among

California appellate courts as to the proper standard

for an "unfair" act under the UCL.  <u>Graham v. Bank of</u>

<u>Am., N.A.</u>, 172 Cal. Rptr. 3d 218, 233 (Cal. Ct. App.

2014).  Upon review of the various tests, the Court

finds that Plaintiff has not offered sufficient

admissible evidence to establish an "unfair" business

act under the UCL.  <u>See</u> <u>id.</u>

    In conclusion, the Court finds that Plaintiff has

failed to meet its burden of proof for establishing a

claim of unfair competition under California's UCL.  As

such, the Court **GRANTS** Defendant's Motion for Summary

Judgment as to Plaintiff's unfair competition claim

under Cal. Bus. & Prof. Code § 17200.

**D.  Request for Costs**

    Defendant requests an award of costs as the

prevailing party.  Def.'s Mem. P&A Mot. Summ. J. 15:28-

16:1, ECF No. 28.  Because the Court does not find that

Plaintiff's claims against Defendant were "groundless,

unreasonable, vexatious, or pursued in bad faith,"

Defendant's request for costs is **DENIED**.  <u>Gracie v.</u>
<u>Gracie</u>, 217 F.3d 1060, 1071 (9th Cir. 2000); <u>see</u> 15
U.S.C. § 1117(a).

### IV. CONCLUSION

Based on the foregoing, the Court **GRANTS**
Defendant's Motion for Summary Judgment and **DENIES**
Defendant's request for an award of costs.

As such, it is **HEREBY ORDERED** that Judgment be
entered in favor of Defendant Shannon Packaging Co. as
to all claims asserted against it in this Action by
Plaintiff Caltex Plastics, Inc., and the parties shall
bear their own costs.

**IT IS SO ORDERED.**

DATED: May 27, 2015

RONALD S.W. LEW
**HONORABLE RONALD S.W. LEW**
Senior U.S. District Judge

30